IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| PAUL SMITH, #B64568, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:24-cv-01807-MAB |
| | ) |
| ANTHONY WILLS, | ) |
| OFFICER KNIGHT, | ) |
| OFFICER DELANEY, | ) |
| JON LOFTUS, and | ) |
| LATOYA HUGHES, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM AND ORDER

Plaintiff Paul Smith filed a Second Amended Complaint (Doc. 10) pursuant to 42 U.S.C. § 1983 against prison officials who allegedly subjected him to unconstitutional conditions of confinement in disciplinary segregation at Menard Correctional Center. Plaintiff alleges that he was denied a mattress, bedding, and cleaning supplies. He seeks declaratory, monetary, and injunctive relief consisting of an order expunging the disciplinary ticket that resulted in his placement in segregation. *Id*.

The Second Amended Complaint is now before the Court for screening under 28 U.S.C. § 1915A.[1] Any portion that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *Id*.

---

[1] The Court has jurisdiction to screen the Second Amended Complaint in light of Plaintiff's consent to the full jurisdiction of a Magistrate Judge, and the limited consent by the Illinois Department of Corrections to the exercise of Magistrate Judge jurisdiction as set forth in the Memorandum of Understanding between this Court and the Illinois Department of Corrections.

1

**SECOND AMENDED COMPLAINT**

Plaintiff sets forth the following allegations in the Second Amended Complaint (Doc. 10, pp. 1-9): When he transferred to Menard on October 27, 2023, Plaintiff was placed in segregation for 28 days as punishment for a disciplinary ticket he received at Western Illinois Correctional Center. Plaintiff complains about the poor living conditions he endured in Cell 451. The cell, sink, and toilet were extremely dirty and encrusted with "crud." No cleaning supplies were available. Instead of a bed, there was a "piece" of foul-smelling mattress and no bedding. *Id*.

Plaintiff requested a replacement mattress, bedding, and cleaning supplies. He spoke directly to Safety & Sanitation Officer Delaney on three separate occasions. Officer Delaney agreed to look for a mattress but never provided one. The officer instructed Plaintiff to ask a gallery officer for bedding and cleaning supplies. When Plaintiff did so, Gallery Officer Knight checked the mattress and said he would look for a replacement. However, the officer never provided one. He also failed to provide any cleaning supplies for 28 days and failed to provide bedding for 9 days. *Id*.

According to Plaintiff, he reported the unsanitary living conditions in a letter to Warden Wills and requested adequate bedding and cleaning supplies. Warden Wills did not respond to the first letter or a second letter sent a week later, so Plaintiff sent a complaint about the living conditions to Governor J.B. Pritzker. Warden Wills responded two weeks later by indicating that cleaning supplies were passed out to inmates. However, Plaintiff says they were not. *Id*.

Plaintiff further alleges that Illinois Department of Corrections (IDOC) Director

2

Latoya Hughes failed to address the inhumane living conditions even after Plaintiff filed grievances and letters.

Administrative Review Board (ARB) Chairperson Jon Loftus had authority to dismiss the disciplinary ticket that resulted in Plaintiff's punishment with segregation. Plaintiff contends that Loftus violated his due process rights by failing to dismiss the ticket and thereby subjecting him to inhumane living conditions in segregation. *Id.*

During his 28 days in segregation, Plaintiff never received a replacement mattress or cleaning supplies. And for 9 days, he also lacked bedding. Plaintiff's exposure to these unsanitary living conditions, dust, and mites caused a flare-up of his severe, chronic allergy and sinus problems, and he developed a rash. In addition, he developed neck and back pain after sleeping on the inadequate mattress. *Id.*

## DISCUSSION

The Court designates the following counts in the *pro se* Second Amended Complaint:

**Count 1:** Eighth Amendment claim against Officers Delaney and Knight for denying Plaintiff access to adequate bedding and cleaning supplies in disciplinary segregation for 28 days beginning October 27, 2023, after he spoke to both officers about the filthy cell, soiled mattress, and lack of bedding.

**Count 2:** Eighth Amendment claim against Warden Wills and IDOC Director Hughes for denying Plaintiff access to adequate bedding and cleaning supplies in disciplinary segregation for 28 days beginning October 27, 2023, after he filed letters, complaints, or grievances to report the filthy cell, soiled mattress, and lack of bedding.

**Count 3:** Fourteenth Amendment due process claim or Eighth Amendment deliberate indifference claim against ARB

3

>Chairperson Loftus for failing to dismiss the disciplinary ticket that resulted in Plaintiff's punishment with 28 days of segregation in inhumane living conditions in Cell 451.

**Any other claim mentioned in the Second Amended Complaint but not addressed here is considered dismissed without prejudice as inadequately pled under *Twombly*.**[2]

### Counts 1 and 2

The Eighth Amendment prohibits cruel and unusual punishment of convicted persons. U.S. CONST. amend VIII. The amendment imposes a duty on prison officials to provide inmates with humane conditions of confinement and ensure that they receive adequate food, clothing, shelter, and medical care. *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To show a violation of the Eighth Amendment, an inmate must allege an objectively serious deprivation and each defendant's subjective awareness and disregard of a substantial risk of serious harm to the inmate. *Id.* at 720 (citing *Farmer*, 511 U.S. at 837).

At this stage of the proceedings, Plaintiff describes a sufficiently serious deprivation to support an Eighth Amendment claim. According to the allegations, he spent 28 days in a dirty cell without cleaning supplies or adequate bedding. As a result of his exposure to these conditions, he suffered from a flare-up of his serious allergy and sinus problems, a rash, and neck and back pain. *See Vinning-El v. Long*, 482 F.3d 923, 923-25 (7th Cir. 2007) (reversing summary judgment where prisoner housed in filthy cell and deprived of basic sanitation items and mattress for six days); *Johnson v. Pelker*, 891 F.2d

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (action fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face").

136, 139-40 (7th Cir. 1989) (reversing summary judgment where prisoner's requests for cleaning supplies were denied while he spent three days in cell with feces-stained walls and no running water).

According to Plaintiff, Officers Delaney and Knight were aware of the filthy conditions, inadequate bedding, and lack of cleaning supplies. Plaintiff spoke directly to them about these conditions repeatedly. Even so, the officers deliberately disregarded his requests for a replacement mattress, bedding, and cleaning supplies. Therefore, Count 1 will proceed against both officers.

Plaintiff also notified Warden Wills of the inhumane living conditions repeatedly by writing to him directly. Weeks later, Plaintiff received a single response from Warden Wills indicating that cleaning supplies were provided to inmates. However, Plaintiff says he never received them. Construed liberally and given the stage of the proceedings, Plaintiff's allegations sufficiently articulate a claim of deliberate indifference against the Warden for turning a blind eye to Plaintiff's living conditions. Count 1 will proceed against Warden Wills.

However, the allegations against IDOC Director Hughes fall short of articulating an Eighth Amendment claim. Like all claims brought under § 1983, liability requires personal involvement in a constitutional deprivation. *See Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Plaintiff relies on vague allegations about grievances and letters that could have or should have put Director Hughes on notice of his inhumane living conditions. Plaintiff offers no information about the date of each communication, a description of the content, the place he sent each one, or any responses he received.

5

Without this basic information, Plaintiff fails to state a claim upon which relief may be granted against Director Hughes. Count 1 will be dismissed against Director Hughes.

### Count 3

Plaintiff brings a Fourteenth Amendment due process claim for the disciplinary ticket he received at Western Illinois Correctional Center.[3] Unlike his earlier due process claims in the original Complaint and Amended Complaint, Plaintiff does not challenge the underlying disciplinary ticket as false. Nor does he challenge any aspect of the disciplinary hearing as flawed. Plaintiff simply observes that ARB Chairperson Loftus could have dismissed the ticket and prevented his transfer into segregation but failed to do so. These allegations simply do not articulate a Fourteenth Amendment due process claim against Loftus in the Second Amended Complaint.

Moreover, Plaintiff makes no claim that Loftus had knowledge of his living conditions or personal involvement in his continued exposure to harm in Cell 451. Plaintiff fails to allege that Loftus had any actual knowledge of or personal involvement in the decision to move Plaintiff into a dirty cell with inadequate bedding and no cleaning supplies. *Horshaw v. Casper*, 910 F.3d at 1029. Moreover, even if the Court viewed this claim as one under the Eighth Amendment, Count 3 would still fail to survive screening against Loftus because Plaintiff has failed to allege his subjective awareness of his living

---

[3] When screening the original Complaint (Docs. 1 and 6) and First Amended Complaint (Docs. 7 and 9), the Court summarized the Fourteenth Amendment due process standard applicable to claims arising in the prison disciplinary context and applied that standard to Plaintiff's direct challenge to the underlying disciplinary ticket and hearing that resulted in his punishment with segregation. The Court will not repeat that standard here because Plaintiff has abandoned his direct challenge to the disciplinary ticket in the Second Amended Complaint.

conditions or personal involvement in the harm he incurred.

## DISPOSITION

The Second Amended Complaint (Doc. 10) survives preliminary review under 28 U.S.C. § 1915A.

**COUNT 1** will proceed against Defendants **OFFICER DELANEY** and **OFFICER KNIGHT**, and **COUNT 2** will proceed against Defendant **WARDEN ANTHONY WILLS**.

However, **COUNTS 1, 2,** and **3** are **DISMISSED** without prejudice for failure to state a claim against **ALL OTHER DEFENDANTS**. Defendants **JON LOFTUS** and **LATOYA HUGHES** are **DISMISSED** without prejudice.

**The Clerk's Office is DIRECTED to TERMINATE JON LOFTUS and LATOYA HUGHES as parties in CM/ECF.**

With regard to **COUNTS 1** and **2,** the Clerk of Court shall prepare for **WARDEN ANTHONY WILLS, OFFICER DELANEY,** and **OFFICER KNIGHT**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, the Second Amended Complaint (Doc. 10), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with Defendant's current work address, or, if not known, Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint (Doc. 10) and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244 and SDIL-Local Rule 8.2, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 5, 2025**

                                **/s/ Mark A. Beatty**
                                **MARK A. BEATTY**
                                **United States Magistrate Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, Defendants will enter appearances and file Answers to your Second Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.